# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### NORTHERN DIVISION

CHEY DAVIS,

      Plaintiff,                                  USDC Case No. 1:22-cv-12319

v.                                              Hon. Thomas L. Ludington

DELTA COLLEGE and
JEAN GOODNOW, Retired President of
Delta College, in her individual capacity,

      Defendants.

---

| PINSKY, SMITH, FAYETTE & KENNEDY, LLP | THRUN LAW FIRM, P.C. |
|---|---|
| Sarah Riley Howard (P58531) | Roy H. Henley (P39921) |
| Crystal J. Bultje (P80276) | Cathleen M. Dooley (P86148) |
| *Attorneys for Plaintiff* | *Attorneys for Defendant Delta College* |
| 146 Monroe Center, N.W., Suite 418 | P.O. Box 2575 |
| Grand Rapids, MI 49503 | East Lansing, MI 48826 |
| (616) 451-8496 | (517) 374-8864/(517) 484-0041 (Fax) |
| showard@psfklaw.com | RHenley@ThrunLaw.com |
| cbultje@pinskysmith.com | cdooley@thrunlaw.com |
| | |
| | KELLER THOMA, P.C. |
| | Gouri G. Sashital (P64628) |
| | *Attorneys for Defendant Jean Goodnow* |
| | 26555 Evergreen Road, Suite 550 |
| | Southfield, MI 48076 |
| | (313) 965-8936/(313) 965-4480 (Fax) |
| | gsr@kellerthoma.com |

---

## DEFENDANT JEAN GOODNOW'S
## MOTION FOR SUMMARY JUDGMENT

NOW COMES Defendant, **JEAN GOODNOW** ("Defendant Goodnow"), by and through her attorneys, KELLER THOMA, P.C., and for her Motion for Summary Judgment states as follows:

1.     In this action, Plaintiff Chey Davis alleges that Defendant Jean Goodnow discriminated against her on the basis of race (African-American) in violation of the Michigan Elliot-Larsen Civil Rights Act, MCL § 37.2101 *et seq.*, and retaliated against her in violation of the First Amendment to the United States Constitution.[1]

2.     For the reasons set forth in the attached Brief in Support, Defendant Goodnow moves for summary judgment pursuant to Federal Rule of Civil Procedure 56(c) as to all claims Plaintiff asserted against her in the Complaint.

3.     Pursuant to E.D. Mich. LR 7.1(a), the undersigned counsel certifies that on August 22, 2023, counsel requested, in writing, the concurrence of Plaintiff's counsel regarding the relief requested herein, but concurrence was expressly denied, necessitating the filing of this Motion.

**WHEREFORE**, Defendant, **JEAN GOODNOW**, respectfully requests the Court to grant her Motion for Summary Judgment, to enter an order dismissing, with

---

[1] In Count II of her Complaint, Plaintiff also alleged that Defendant Goodnow discriminated against her on the basis of sex (ECF No. 1, PageID14-15); however, the parties have submitted a stipulated order dismissing this claim.

prejudice, Plaintiff's Complaint in its entirety, and to award such other relief as the Court determines appropriate.

Respectfully submitted,

**KELLER THOMA, P.C.**

By:    /s/ Gouri G. Sashital
Gouri G. Sashital (P64628)
Attorneys for Defendant Goodnow
26555 Evergreen Road, Suite 550
Southfield, MI  48076
(313) 965-7610
Fax:  (313) 965-4480
gsr@kellerthoma.com

Dated:  August 25, 2023

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## NORTHERN DIVISION

CHEY DAVIS,

      Plaintiff,                         USDC Case No. 1:22-cv-12319

v.                                  Hon. Thomas L. Ludington

DELTA COLLEGE and
JEAN GOODNOW, Retired President of
Delta College, in her individual capacity,

      Defendants.

---

PINSKY, SMITH, FAYETTE &
KENNEDY, LLP
Sarah Riley Howard (P58531)
Crystal J. Bultje (P80276)
*Attorneys for Plaintiff*
146 Monroe Center, N.W., Suite 418
Grand Rapids, MI  49503
(616) 451-8496
showard@psfklaw.com
cbultje@pinskysmith.com

THRUN LAW FIRM, P.C.
Roy H. Henley (P39921)
Cathleen M. Dooley (P86148)
*Attorneys for Defendant Delta College*
P.O. Box 2575
East Lansing, MI  48826
(517) 374-8864/(517) 484-0041 (Fax)
RHenley@ThrunLaw.com
cdooley@thrunlaw.com

KELLER THOMA, P.C.
Gouri G. Sashital (P64628)
*Attorneys for Defendant Jean Goodnow*
26555 Evergreen Road, Suite 550
Southfield, MI  48076
(313) 965-8936/(313) 965-4480 (Fax)
gsr@kellerthoma.com

---

## BRIEF IN SUPPORT OF
## DEFENDANT JEAN GOODNOW'S
## <u>MOTION FOR SUMMARY  JUDGMENT</u>

# **TABLE OF CONTENTS**

INDEX OF AUTHORITIES ..................................................................... ii

CONCISE STATEMENT OF THE ISSUES PRESENTED ................................. iv

CONTROLLING OR MOST APPROPRIATE AUTHORITY ............................ v

STATEMENT OF FACTS ....................................................................... 1

ARGUMENT ...................................................................................... 10

    A.    The Court Should Grant Summary Judgment Regarding Davis'
        ELCRA Race Discrimination Claim ..................................................... 11

        1.    Davis Cannot Establish Elements 2 And 4 Of The
               *Prima Facie* Case ............................................................ 12

               a.    No Adverse Action Based on Constructive Discharge .......... 12
               b.    Disparate Treatment ................................................. 16

        2.    Davis Cannot Show That Dr. Goodnow's Legitimate, Non-
               Discriminatory Reason Was A Pretext For Discrimination .......... 18

    B.    The Court Should Grant Summary Judgment Regarding Davis'
        First Amendment Retaliation Claim ..................................................... 22

    CONCLUSION ............................................................................... 25

# <u>INDEX OF AUTHORITIES</u>

## <u>Cases</u>

*Alexander v. Ohio State Univ. College of Social Work*,
    429 Fed.Appx. 481 (6th Cir. 2011) ........................................................18
*Baugham v. Battered Women, Inc*.,
    211 Fed. Appx 432 (6th Cir. 2006) ......................................................15
*Benison v. Ross*,
    765 F.3d 649 (6th Cir. 2014) ......................................................... 23, 24
*Chappell v. GTE Products Corp.*,
    803 F.2d 261 (6th Cir. 1986) ...............................................................20
*Chen v. Wayne State Univ.*,
    284 Mich.App. 172, 771 NW2d 820 (2009) .........................................14
DeBrow v Century 21 Great Lakes, Inc,
    463 Mich. 534, 620 NW2d 836 (2001) ................................................11
*Dubey v. Stroh Brewery Co*.,
    185 Mich. App. 561, 462 N.W.2d 758 (1990) ............................... 19, 20
*Dye v. Off. of the Racing Comm'n*,
    702 F.3d 286 (6th Cir. 2012) ...............................................................22
*Garg v. Macomb Cnty. Cmty. Mental Health Servs*.,
    472 Mich. 263, 696 N.W.2d 646 (2005) ............................................. 12
*Hartleip v. McNeilab, Inc*.,
    83 F.3d 767 (6th Cir. 1996) .................................................................15
*Hazle v. Ford Motor Co*.,
    464 Mich. 456 (2001) ................................................................... 12, 19
*Hunter v. General Motors* LLC,
    807 Fed.Appx. 540 (6th Cir. 2020) ......................................................11
*In re Rodriguez*,
    487 F.3d 1001 (6th Cir. 2007) .............................................................13
*Jewett v. Mesick Consolidated Sch. Dist*.,
    332 Mich.App. 462, 957 NW2d 377 (2020) .................................. 13, 15
*Kocsis v. Multi–Care Mgmt., Inc*.,
    97 F.3d 876 (6th Cir.1996) ..................................................................14
*Laster v. City of Kalamazoo*,
    746 F.3d 714 (6th Cir. 2014) ...............................................................13
*Lytle v. Malady*,
    *(On Rehearing),* 458 Mich. 153, 579 NW2d 906 (1998) ....................20
*Mansfield v. City of Murfreesboro*,
    706 Fed.Appx. 231 (6th Cir. 2017) ......................................................23

*Mitchell v. Toledo Hospital*,
   964 F.2d 577 (6th Cir.1992)...................................................................... 16
*Smith v Goodwill Industries of West Michigan, Inc*,
   243 Mich.App 438, 622 NW2d 337 (2000).........................................................16
*Spengler v. Worthington Cylinders*,
   615 F.3d 481 (6th Cir. 2010)......................................................................23
*Stokes v. Detroit Public Schools*,
   807 Fed.Appx. 493 (6th Cir. 2020)............................................................ 19, 21
*Vereecke v. Huron Valley Sch. Dist.,*
   609 F.3d 392 (6th Cir. 2010)................................................................... 22, 24
*Vredevelt v. GEO Grp., Inc*.,
   145 Fed. Appx. 122 (6th Cir. 2005)...............................................................12
*Weigel v. Baptist Hosp. of E. Tennessee*,
   302 F.3d 367 (6th Cir. 2002).....................................................................23
*Weigold v. ABC Appliance Co*.,
   105 Fed.Appx. 702 (6th Cir. 2004)......................................................... 12, 14, 15
*White v. Dep't of Transportation*,
   334 Mich. App. 98, 964 N.W.2d 88 (2020).........................................................20
*Worthy v. Michigan Bell Tel. Co.,*
   472 Fed.Appx. 342 (6th Cir. 2012).................................................................24

## Rules

Federal Rule of Civil Procedure 56(c) ......................................................................2

## Other Authorities

E.D. Mich., LR 7(a) .................................................................................2

## <u>CONCISE STATEMENT OF THE ISSUES PRESENTED</u>

I.    WHETHER THE COURT SHOULD GRANT SUMMARY JUDGMENT AS
      TO PLAINTIFF'S ELCRA CLAIMS OF DISCRIMINATION, WHERE SHE
      CANNOT ESTABLISH A *PRIMA FACIE* CASE AND, EVEN ASSUMING
      *ARGUENDO* SHE COULD, SHE CANNOT ESTABLISH PRETEXT?

      Defendant Goodnow answers "yes."
      The Court should answer "yes."

II.   WHETHER THE COURT SHOULD GRANT SUMMARY JUDGMENT AS
      TO PLAINTIFF'S FIRST AMENDMENT RETALIATION CLAIM, WHERE
      SHE CANNOT ESTABLISH A CAUSAL CONNECTION BETWEEN HER
      ALLEGED    PROTECTED    ACTIVITY    AND    AN    ADVERSE
      EMPLOYMENT ACTION?

      Defendant Goodnow answers "yes."
      The Court should answer "yes."

## <u>CONTROLLING OR MOST APPROPRIATE AUTHORITY</u>

*Dubey v. Stroh Brewery Co*., 185 Mich. App. 561 (1990)

*Dye v. Off. of the Racing Comm'n*, 702 F.3d 286 (6th Cir. 2012)

*Hartleip v. McNeilab, Inc*., 83 F.3d 767, n. 10 (6th Cir. 1996)

*Hazle v. Ford Motor Co*., 464 Mich. 456 (2001)

*Laster v. City of Kalamazoo*, 746 F.3d 714, 728 (6th Cir. 2014)

*Mitchell v. Toledo Hospital*, 964 F.2d 577, 582 (6th Cir.1992)

*Stokes v. Detroit Public Schools*, 807 Fed.Appx. 493 (6th Cir. 2020)

*Vereecke v. Huron Valley Sch. Dist.,* 609 F.3d 392, 400 (6th Cir. 2010)

## STATEMENT OF FACTS

### A. The Parties.

Defendant Dr. Jean Goodnow ("Dr. Goodnow") is the former President of Defendant Delta College ("the College"). Dr. Goodnow retired from the College on August 31, 2021. (Ex.1, Goodnow, pp. 33-34).

The College hired Plaintiff Chey Davis ("Davis") in 2007 as an English Instructor; Dr. Goodnow approved the hire. (Ex.2, Davis, p. 29). Dr. Goodnow was not Davis' direct supervisor. (*Id.*, pp. 23, 25-26). In 2010, Davis was promoted to Assistant Professor; she was granted tenure in 2012, and in 2014, she was promoted to Associate Professor. (Ex.3, Promotion Packet, p. DC000231). These promotions were reviewed and approved by Dr. Goodnow. (Ex.2, Davis, p. 30-2).

Dr. Michael Gavin became President upon Dr. Goodnow's retirement. (Ex.4, Gavin, p. 8). Soon after his arrival, Dr, Gavin learned that many employees viewed the College's culture as "toxic" and that they blamed Dr. Goodnow. (*Id.*, pp. 19, 40, 73; *see also*, Ex.5, Curry, pp. 76-77). Dr. Goodnow was described as a "bully," a "perfectionist," and someone who was challenging to work with. (Ex.4, Gavin, pp. 19, 40, 73; Ex.5, Curry, pp. 77, 169). She had an aggressive and intimidating manner of speaking, would pound the table and point fingers, and sometimes "belittled" subordinates. (Ex.4, Gavin, pp. 21-22, 69, 75; Ex.5, Curry, pp. 170-171). Dr. Goodnow was not selective in who she treated in this manner, as **all** types of

employees were subject to such treatment. (Ex.4, Gavin, pp. 70, 73-76; Ex.5, Curry, pp. 171-174). Davis herself experienced similar behavior from Dr. Goodnow on a few occasions. (Ex.2, Davis, pp. 41-44, 47, 52-53; 172-173). But, as Davis acknowledged, so did others. (*Id.*, pp. 238-239).

In the summer of 2018, the faculty at the College decided to unionize; Davis was one of three employees who notified Dr. Goodnow of this. (Ex.2, Davis, pp. 72-3, 76). The union was formed in January 2019. (Ex.6, January 4, 2019 Email). Davis had no leadership role in the union. (Ex.2, Davis, p. 76).

**B. Dr. Goodnow Denies Plaintiff Promotion To Full Professor.**

Davis applied for promotion to full Professor in the fall of 2018. (Ex.2, Davis Dep., p. 108-109; Ex.3, Promotion Packet). At that time, the qualifications for full professor required, among other things, the candidate to establish "excellence in…teaching effectiveness" and "demonstrated leadership." (Ex.7, Policy 3.010, pp. DC000130-000131; *see also* Ex.2, Davis, p. 87-88). The promotion process consisted of several rounds of review and recommendation before the President reviewed the promotion packet and made a recommendation. (Ex.7, Policy 3.010, pp. DC000131-000132). It is undisputed that, during Dr. Goodnow's tenure, the President's review was independent and not a rubber-stamp. (*Id.*; Ex.1, Goodnow, p. 114; Ex.2, Davis, pp. 107-108).

Davis was recommended for full professor during the initial rounds of the

promotion process. (Ex.2, Davis, p. 116-119; Ex.3, Promotion Packet, p. DC000275-77). In early 2019, Dr. Reva Curry, the College's Vice President, reviewed Davis' promotion packet. (Ex.5, Curry, p. 9). Dr. Curry and Dr. Goodnow discussed the packet and disagreed as to Davis' suitability for promotion. (*Id.*, pp. 102-103, 176; Ex.1, Goodnow, p. 122-3). Dr. Goodnow felt that Davis was lacking in teaching effectiveness and demonstrated leadership. (Ex.1, Goodnow, p. 111; Ex.5, Curry, pp. 102, 117, 121). Teaching effectiveness was evaluated based on scored student evaluations completed by the candidate's students at the end of every semester and during the promotion process.[2] (Ex.1, Goodnow, pp. 111, 177; Ex.2, Davis, pp. 89-93; Ex.8, Academic Promotion Guide). Demonstrated leadership was evaluated based on the candidate's "internal leadership" and the ways in which such leadership benefited the College. (Ex.1, Goodnow, p. 177; Ex.5, Curry, pp. 108, 115, 175).[3]

As it related to teaching effectiveness, the aggregate of Davis' student evaluation scores was low in Dr. Goodnow's view. (Ex.1, Goodnow, p. 135; Ex.5, Curry, pp. 103, 117, 121). Dr. Goodnow testified that student evaluation scores for other candidates were predominantly in the 90th percentile or above. (Ex.1,

---

[2] Davis may argue that studies show implicit bias in student feedback data; however, the College's policies required that student evaluations be taken into consideration for promotion decisions. (Ex.1, Goodnow, pp. 176-177).

[3] While the College's policies did not indicate that "demonstrated leadership" be local to the College, this was the standard Dr. Goodnow consistently applied. (Ex.1, Goodnow, pp. 141, 177-178; Ex.5, Curry, pp. 115-116, 162).

Goodnow, pp. 135-136; *see also* Ex.4, Gavin, 36-37). In Davis' case, however, the scores were less than 90% on 7 of the 8 questions asked of students. (Ex.3, Promotion Packet, pp. DC000247, DC000271-000272). Indeed, in response to the question "as a result of Professor Davis' teaching, how much did you learn in her class(es)?" **only 67%** of Davis' students answered that they learned "'a great deal' or 'more than most courses.'" (*Id.*). Also of concern to Dr. Goodnow were the comments students made in the feedback forms. (Ex.1, Goodnow, pp. 112, 175-176). For example, several students commented that Davis was not actually teaching them English, the subject matter of the course:

- "Talk more about English related things"

- "Add more [E]nglish instruction"

- "[T]each more about [E]nglish and how to write."

- "Teach more English, how to properly write an essay."

- "[[H]er 'lectures' didn't seem to have anything to do with what we are supposed to write an essay on." (Ex.9, Student Comments).

Several students were explicit that they did not learn in Davis' classes:

- "I felt I didn't learn anything that pertained to [E]nglish."

- "I don't [*sic*] learn any [E]nglish."

- "I didn't really benefit from this class."

- "Still don't know how to use comma's."

- "Overall a waste of my time, and money."

- "I hardly learned." (*Id.*).

In Dr. Goodnow's assessment, these comments demonstrated a "pattern" indicating that the learning strategies Davis was using were not resulting in students learning. (Ex.1, Goodnow, pp. 112, 175-176). Based on Dr. Goodnow's experience, the comments from Davis' students were significantly outside the average for other professors applying for promotion to full professor. (*Id.*, pp. 113-115, 136-137).

As it related to Davis' leadership, the bulk of her leadership experience was external to the College. (Ex.3, Promotion Packet, pp. DC000243-000245; Ex.5, Curry, p. 176). Dr. Goodnow therefore questioned how this leadership applied to the College. (Ex.1, Goodnow, pp. 121-122).

After discussing the concerns with Davis' teaching effectiveness and leadership, Dr. Goodnow agreed to allow Dr. Curry to meet with Davis to provide her with an opportunity to supplement her promotion packet. (Ex.1, Goodnow, pp. 108-109; Ex.5, Curry, p. 106; Ex.10, March 20, 2019 Email). Dr. Curry thereafter advised Davis to provide "more evidence" of leadership and any additional student evaluations. (Ex.5, Curry, p. 107-108). Davis provided only a supplemental statement on her leadership, but it did not alleviate the concerns Dr. Goodnow had with her promotion packet. (Ex.11, Supplemental Statement).

Accordingly, on April 5, 2019, Dr. Goodnow advised Davis in a memo that

she was delaying Davis' promotion, as permitted under the College's policy, in order to request additional information to address the concerns with Davis' teaching effectiveness and leadership. (Ex.2, Davis, p. 119-20; Ex.7, Policy 3.010, p. DC000132; Ex.12, April 5, 2019 Memo). Dr. Goodnow explained as follows:

- Dr. Goodnow indicated that she had concerns with Davis' teaching effectiveness based on her "personal, physical contact with a student." This was a reference to a notation made by a member of Davis' peer review committee, who had observed Davis "gently tapping [a] student's head with a marker" during a classroom observation. (Ex.3, Promotion Packet, p. DC000267; Ex.12, April 5, 2019 Memo).[4]

- Dr. Goodnow indicated, with respect to Davis' teaching effectiveness, that she was concerned that the feedback included "concern from some students regarding the content of the material you are teaching and its relationship to the discipline you are teaching in." (Ex.12, April 5, 2019, Memo).

- Dr. Goodnow indicated concerns with Davis' "demonstrated leadership," noting that she could not "see how your participation in certain conferences and professional development opportunities and your coordination of specific events can be translated as leadership at the level of Full Professor." (*Id.*).

Dr. Goodnow requested that Davis provide additional data, including Davis' student

---

[4] At her deposition, Davis claimed that she never touched the student's head but instead tapped the brim of the student's hat. (Ex.2, Davis, pp. 120-122). She admitted, however, that her promotion packet did not state that she tapped the student's hat. (*Id.*, pp. 121-122; *see also* Ex.3, Promotion Packet, p. DC000267). Davis also claimed that Dr. Goodnow's use of the term "physical" to describe the contact somehow insinuated an act of sexual impropriety. (Ex.2, Davis, pp. 235-236). She admitted, however, that this was simply her interpretation of what Dr. Goodnow meant, and that Dr. Goodnow herself never used that terminology to describe the interaction. (*Id.*, pp. 236-237). In any event, as discussed *infra*, Dr. Goodnow did not rely on Davis' interaction with the student in denying her promotion. (Ex.13, December 6, 2019 Memo).

feedback from 2015-2019 and documentation regarding Davis' "leadership within the College." (*Id.*; Ex.2, Davis, at pp. 128-129).

On June 4, 2019, Dr. Goodnow advised Davis that she was further delaying her promotion to full professor. (Ex.14, June 4, 2019 Memo). This was because Davis had not provided any of the information Dr. Goodnow had requested in the April 5, 2019 memo. (*Id.*) Accordingly, Dr. Goodnow once again requested that Davis provide her student feedback, including comments, from 2014-2019, and requested that Davis provide "specific examples" of the connection between Davis' external leadership experiences and the College. (*Id.*) In addition, Dr. Goodnow asked Davis to provide "clarity regarding the documentation you receive from students granting permission for you to physically touch them as part of active learning practices." (*Id.*)

On June 18, 2019, Dr. Goodnow finally received the student feedback she had been requesting since April; however, the feedback was incomplete and missing data. (Ex.1, Goodnow, pp. 129, 174-175; Ex.15, Student Feedback).[5] Davis also

---

[5] For example, Davis only provided aggregated student feedback summaries for the winter of 2015, the fall and winter of 2016, and the fall of 2017. (Ex.15, Student Feedback, pp. DC000559, DC000568-000570). Davis also did not provide any student feedback forms for the fall semesters of 2015 and 2019, the winter semester of 2017, and none from 2014 or 2018. (*Id.*, p. DC 000560-000586). Davis claimed at her deposition that the department secretary was supposed to forward the student feedback to Dr. Goodnow but admitted that she never verified whether that occurred. (Ex.2, Davis, pp. 129, 140, 145). Davis also claimed that she was unaware that information was missing but admitted that she did not review the student feedback

forwarded Dr. Goodnow the supplemental leadership statement she had previously provided to Dr. Curry. (Ex.2, Davis, p. 140). As to the student interaction concern, Davis testified she did not have written documentation from students giving her permission to touch them as part of active learning practices, but that she "probably" told Dr. Goodnow that she obtained verbal permission before touching them. (*Id.*, pp. 140-141).

Davis' submissions were insufficient. On August 14, 2019, Dr. Goodnow denied Davis' application for promotion based on a lack of evidence regarding teaching effectiveness and demonstrated leadership. (Ex.16, August 14, 2019, Memo). In Dr. Goodnow's view, Davis' student feedback and peer review committee observations demonstrated "ability" but not "a level of excellence in teaching effectiveness required for full professor"; Dr. Goodnow noted that Davis' student evaluation scores were, in fact, trending downward over the last five years in two of the courses she taught. (*Id.*). As to leadership, Dr. Goodnow determined there was no evidence of leadership "that meets the criteria for full professor." (*Id.*).

Thereafter, Davis filed a grievance. (Ex.7, Policy 3.010, p. DC000133; Ex.17, Grievance). The grievance committee met on November 6, 2019 to review Davis' grievance. (Ex.2, Davis, pp. 154-155). The committee recommended that Davis' promotion packet be reexamined because, among other things, in its view Dr.

---

before it was submitted to Dr. Goodnow. (*Id.*, p. 145).

Goodnow employed an "expanded" definition of leadership that was not consistent with the College's policy; "clear explanations" were provided at the grievance hearing regarding Davis' student feedback and student contact concerns; and numerical data was inadvertently left out of the promotion packet. (Ex.18, Grievance Committee Recommendation). Davis did not appeal the grievance committee's decision. (Ex.2, Davis, pp. 164-165).

Dr. Goodnow issued her final decision regarding Davis' promotion on December 6, 2019. (Ex.13, December 6, 2019 Memo). After re-considering Davis' promotion packet, Dr. Goodnow denied her promotion to full professor solely on the basis of Davis' lack of demonstrated excellence in teaching effectiveness. (*Id.*). In denying her promotion, Dr. Goodnow encouraged Davis to reapply after working on her leadership and teaching focus. (*Id.*). As Dr. Goodnow testified, she "thought [Davis] had the potential, if she got some help, to come after [the promotion] again and probably she could succeed if she followed through." (Ex.1, Goodnow, p. 180).

## C. Davis Resigns After Being Retroactively Promoted With Back Pay.

Following Dr. Goodnow's retirement in August 2021, her successor, Dr. Gavin, agreed to review Davis' promotion packet. (Ex.4, Gavin, pp. 28-32, 42; Ex.5, Curry, p. 149). Dr. Gavin disagreed with Dr. Goodnow's assessment of Davis' leadership and teaching effectiveness. (Ex.4, Gavin, pp. 34-35). In his view, leadership could be established with external leadership experiences; as to teaching

9

effectiveness, Dr. Gavin acknowledged that Davis' student evaluation scores "were lower" than that of other applicants for full professor, but he believed that there were explanations justifying the lower scores. (*Id.*, pp. 35-37, 77, 79-80). As Dr. Gavin testified, his assessment that Davis' credentials were sufficient for promotion to full professor was simply a difference of opinion from that of Dr. Goodnow. (*Id.*, p. 80).

On January 28, 2022, Dr. Gavin approved Davis' promotion to full professor retroactive to July 1, 2019 with back pay. (Ex.2, Davis, pp. 285-287; Ex.4, Gavin, pp. 34, 37-38; Ex.19, January 28, 2022 Memo). Dr. Gavin's hope was that Davis would stay at the College, something he explicitly asked her to do. (Ex.4, Gavin, pp. 37-38, 81). Davis admitted that she considered staying at the College after the retroactive promotion. (Ex.2, Davis, pp. 287-288). However, in June of 2022, Davis decided to resign because she did not feel there were "substantive changes" at the College, which she explained related to a lack of changes in administration and struggles with the faculty, particularly in negotiating the union contract. (*Id.*, p. 287-288). Davis accordingly resigned June 30, 2022. Ex. 20 July 7, 2022 Memo).

## ARGUMENT

Davis brings two claims against Dr. Goodnow:

- Count I: Race discrimination in violation of the Elliot Larsen Civil Rights Act, MCL § 37.2101 *et seq.* ("ELCRA").

- Count III: First Amendment retaliation in violation of 42 USC §

1983.(ECF No. 1, Page ID8-18).[6]

All three claims are ripe for summary judgment, as discussed below.

**A. <u>The Court Should Grant Summary Judgment Regarding Davis'
ELCRA Race Discrimination Claim</u>**.

Davis alleges that Dr. Goodnow violated the ELCRA by discriminating
against her based on her race, African-American. (ECF No. 1, PageID13-15).[7] In
order to withstand summary judgment of this claim, Davis must be able to
demonstrate discriminatory intent by Dr. Goodnow. *DeBrow v Century 21 Great
Lakes, Inc*, 463 Mich. 534, 539, 620 NW2d 836 (2001). She may do so by presenting
either direct evidence or circumstantial evidence. *Id*. Davis has no direct evidence
of race discrimination. (Ex. 2, Davis, pp. 61:12-16, 66:22-24, 67:13-19, 197:7-11).

Under the circumstantial evidence approach, Davis must first establish a

---

[6] As noted *supra*, the parties have stipulated to dismiss Count II, sex discrimination
in violation of the ELCRA.

[7] Davis also alleges that she was harassed in violation of the ELCRA (ECF No. 1,
PageID13, ¶31; Ex. 2, Davis, p. 204), but it is not clear whether this claim is brought
separate from her claim of discrimination. To the extent it is a separate claim, Davis
has not established the elements of a hostile work environment since, *inter alia*, she
has not shown that any of the alleged harassing conduct – *i.e.* Dr. Goodnow's poor
treatment of her, Dr. Goodnow's focus on student comments during the promotion
process (Ex.2, Davis, pp. 204-205) – was on the basis of race, nor has she shown
that the harassment was severe or pervasive. *Hunter v. General Motors* LLC, 807
Fed.Appx. 540, 544-545 (6th Cir. 2020). On this last point, Davis testified that the
alleged harassing conduct only occurred "once a semester" starting around 2017
before contact with Dr. Goodnow ended in December 2019. (Ex.2, Davis, pp. 21-
22,171, 205, 208). Even assuming the conduct at issue was discriminatory, it is not
sufficiently severe or pervasive to establish a hostile environment. *Hunter*, 807
Fed.Appx. at 545.

*prima facie* case by showing that (1) she is a member of a protected class, (2) she suffered an adverse employment action, (3) she was qualified for the position, and (4) she was treated differently than similarly situated members outside of her protected class. *Hazle v. Ford Motor Co*., 464 Mich. 456, 462–63, (2001)*; Vredevelt v. GEO Grp., Inc*., 145 Fed. Appx. 122, 130 (6th Cir. 2005).[8] If Davis successfully establishes a *prima facie* case, then the burden shifts to Dr. Goodnow to provide a legitimate, nondiscriminatory reason for her decision. *Hazle*, 464 Mich. at 464. Once she has done so, the burden shifts back to Davis to demonstrate that Dr. Goodnow's reason was pretext for unlawful discrimination. *Id.* at 465.

### 1.  Davis Cannot Establish Elements 2 And 4 Of The *Prima Facie* Case.

#### a.  No Adverse Action Based On Alleged Constructive Discharge.[9]

Davis claims she was constructively discharged. (ECF No. 1, PageID12 at ¶22).  While a constructive discharge can constitute an adverse employment action, Davis must show that (1) Dr. Goodnow deliberately created intolerable working conditions, as perceived by a reasonable person, and (2) Dr. Goodnow did so with the intention of forcing Davis to quit. *Weigold v. ABC Appliance Co*., 105 Fed.Appx.

---

[8] In analyzing claims brought under the ELCRA, it is appropriate for this Court to look to analogous federal laws and holdings to guide its decision. *Garg v. Macomb Cnty. Cmty. Mental Health Servs*., 472 Mich. 263, 278, 696 N.W.2d 646 (2005).

[9] Dr. Goodnow does not dispute that Davis has established an adverse action by way of the promotion denial.

702, 708 (6th Cir. 2004); *Jewett v. Mesick Consolidated Sch. Dist*., 332 Mich.App. 462, 471–73, 957 NW2d 377 (2020).

Davis testified she was constructively discharged in December 2019 when Dr. Goodnow made the final decision to deny her promotion to full professor. (Ex.2, Davis, pp. 190-192). But a failure to promote cannot support a constructive discharge claim. *In re Rodriguez*, 487 F.3d 1001, 1011 (6th Cir. 2007) ("[W]e have held that a plaintiff cannot establish a constructive discharge by claiming, without more, that his employer's failure to promote him to what he perceives as his rightful position created intolerable working conditions.") (citations/quotations omitted).

Davis has no other evidence of intolerable working conditions. The following employment actions may be considered to establish intolerable working conditions:

> (1) demotion; (2) reduction in salary; (3) reduction in job responsibilities; (4) reassignment to menial or degrading work; (5) reassignment to work under a younger supervisor; (6) badgering, harassment, or humiliation by the employer calculated to encourage the employee's resignation; or (7) offers of early retirement or continued employment on terms less favorable than the employee's former status. *Laster v. City of Kalamazoo*, 746 F.3d 714, 728 (6th Cir. 2014) (internal citations omitted).

**None** of these are present here. Davis admitted that Dr. Goodnow did not demote her, reduce her salary, change her job responsibilities, or reassign her. (Ex.2, Davis, pp. 61, 199). Davis admitted Dr. Goodnow never threatened to terminate her or

revoke her tenure and she never disciplined her.[10] (*Id.*, pp. 15, 198-199, 256). While Davis claimed she was badgered and humiliated because Dr. Goodnow allegedly "growled" at her at a meeting, shouted at her during a discussion about policies, and used a combative tone with her, (*Id.*, pp. 200-201), these handful of instances over the span of Davis' 14 years of employment are hardly compelling. *Weigold*, 105 Fed.Appx. at 709 (fleeting nature of employer's comments, as opposed to remarks that spanned the course of the plaintiff's employment, precluded a constructive discharge claim). This is particularly true because Davis admittedly had **no contact** with Dr. Goodnow between December 2019 and her July 2022 resignation. (Ex.2, Davis, pp. 21-22, 171).

Indeed, Davis resigned nearly a year after Dr. Goodnow retired. (Ex.1, Goodnow, pp. 34; Ex.20, July 7, 2022 Memo). She admitted that she continued to work for 2.5 years after her supposed constructive discharge and admitted that the circumstances of her employment were not so intolerable that she had to

---

[10] Davis claimed Dr. Goodnow "disciplined" her by asking the Human Resources Director and Police Chief to meet with Davis after she reported feeling "unsafe" at a meeting discussing a policy change. (Ex.2, Davis, pp. 43-45). However, Davis admitted she lost no pay, was not demoted, had no change in job duties, was not issued anything in writing indicating she was being disciplined, and was not aware of anything being placed in her personnel file. (*Id.*, pp. 46-47). This is clearly not an adverse action. *Kocsis v. Multi–Care Mgmt., Inc*., 97 F.3d 876, 885 (6th Cir.1996) ("adverse action" is a "materially adverse change in the terms or conditions of employment"); *see also Chen v. Wayne State Univ.*, 284 Mich.App. 172, 201, 771 NW2d 820 (2009) (providing examples of "adverse actions").

immediately quit following the denial of the promotion. (Ex.2, Davis, pp. 192). In fact, she actually considered staying after the College retroactively promoted her, but eventually decided to resign in June 2022 because she felt there were not enough substantive changes in the College administration and there were difficulties finalizing the union contract. (*Id.*, pp. 287-288). By remaining employed at the College for **years** after she was denied promotion and ***months*** after Dr. Goodnow retired, Davis cannot credibly argue that Dr. Goodnow constructively discharged her in December 2019. *Hartleip v. McNeilab, Inc.*, 83 F.3d 767, n. 10 (6th Cir. 1996) (no constructive discharge because plaintiff admitted the relevant harassing conduct ceased months before her resignation.); *Baugham v. Battered Women, Inc.*, 211 Fed. Appx 432, 440–41 (6th Cir. 2006) (no constructive discharge where plaintiffs resigned "well after all harassing behavior had stopped").

Finally, Davis cannot show that Dr. Goodnow intended to force her to quit. *Weigold*, 105 Fed.Appx. at 708; *Jewett*, 332 Mich.App. at 471–73. Davis herself admitted that she did not know if Dr. Goodnow was trying to force her resignation. (Ex.2, Davis, p. 198). Dr. Goodnow denied she was, and, in fact, testified that she "absolutely" intended for Davis to reapply for promotion after she got some help because she "thought [Davis] had the potential." (Ex.1, Goodnow, p. 180; *see also* Ex.13, December 6, 2019 Memo). There is thus no evidence of constructive discharge, and summary judgment must be granted.

b. <u>No Disparate Treatment</u>.

Davis claims she was treated differently than similarly-situated faculty with respect to the promotion denial. (ECF No. 4, PageID 13 and 15, ¶¶32-33, 37). To be considered "similarly situated" to another employee, Davis must prove that "all of the relevant aspects" of her employment situation were "nearly identical" to those with whom she compares herself. *Smith v Goodwill Industries of West Michigan, Inc,* 243 Mich.App 438, 448, 622 NW2d 337 (2000); *Mitchell v. Toledo Hospital*, 964 F.2d 577, 582 (6th Cir.1992).

Davis claims that four[11] Caucasian faculty are similarly-situated to her: Janis Kendziorski, Christopher Curtis, David Baskind, and Ray Lacina. (Ex.21, Response to Interrogatory No. 4). They are not, for several reasons. First, except for Lacina, none of the other three proposed comparators were English professors like Davis. (Ex. 22, Comparator Data, pp. DC000669, DC000760, DC000829). Second, Davis' student evaluations were markedly lower than Baskind, Curtis, and Kendziorski, with her scores averaging between 75%-90% and actually dipping as low as 67%. (Ex.3, Promotion Packet, pp. DC000247, DC000271-000272; *see also* Ex.1, Goodnow, p. 135-136 and Ex.4, Gavin, 36-37, 79-80). In contrast:

- With few exceptions, Baskind's scores were at 90% in almost every category. (Ex. 22, Comparator Data, p. DC000700-705);

---

[11] Davis also claimed Laura Dull was similarly situated; however, no documents were requested or produced regarding Dull's promotion packet.

- Curtis' scores fell below less than 90% in only three categories. (*Id.*, p. DC000778-9);

- Kendziorski scored an average of 96% over 5 years. (*Id.*, p. DC000855-7).

Third, there is no evidence that any of the proposed comparators had consistent negative student comments, like Davis; as Dr. Goodnow testified, she had never encountered a similar pattern of comments in reviewing student evaluation feedback from other candidates. (Ex.1, Goodnow Dep., pp. 113, 115; Ex.9, Student Comments). Fourth, other than Davis, no other candidate had submitted a promotion packet with missing student feedback data, which was an additional concern of Dr. Goodnow's. (Ex.1, Goodnow Dep., pp. 129-130, 174). Finally, while leadership was not a basis Dr. Goodnow used in denying Davis the promotion the final time (Ex.13, December 6, 2019 Memo), it was a consideration earlier in the process. (Ex.16, August 14, 2019 Memo). On this point, the differences in internal, college-related leadership experiences between Davis and the proposed comparators is glaring. (Compare Ex.3, Promotion Packet, p. DC000239 to Ex.22, Comparator Data, pp. 000684-689, DC000767-771, 000837-000842).

As to Lacina, who was an English Professor like Davis, there is also no comparison. Unlike Davis, Lacina's student feedback scores ranged between 86.4% - 98%, and there is no evidence of missing student feedback data or a pattern of negative student comments. (Ex.1, Goodnow Dep., pp. 20-21, 113, 115; Ex.22,

Comparator Data, p. DC000610-14). Regarding leadership, Dr. Goodnow initially denied Lacina's promotion to full professor based on a lack of internal leadership experience. (Ex.1, Goodnow, pp. 22, 178-179; Ex.5, Curry Deposition, pp. 116, 160-161; Ex.22, Comparator Data, pp. DC000594-DC000596; Ex.23, October 20, 2014 Memo). After Lacina requested a meeting to present additional evidence of leadership, Dr. Goodnow agreed to promote him. (Ex.1, Goodnow, pp. 178-179). Davis neither requested such a meeting nor presented additional evidence of leadership, another factor that distinguishes her from Lacina. (*Id.*).

It is undisputed that Dr. Goodnow applied the same standard of review to Davis' promotion packet that she did to all other candidates, including the proposed comparators. (Ex.1, Goodnow, pp. 114, 141, 177-178; Ex.5, Curry, pp. 115-116, 121-122, 161-163). Davis' claim of disparate treatment thus amounts to a disagreement over the application of that standard to her. This is insufficient. *Alexander v. Ohio State Univ. College of Social Work*, 429 Fed.Appx. 481, 487-488 (6th Cir. 2011) (no evidence of disparate treatment where plaintiff "has not established that the evaluation criteria were applied differently to him than to non-African-American faculty"). Summary judgment must be granted.

### 2. Davis Cannot Show That Dr. Goodnow's Legitimate, Non-Discriminatory Reason Was A Pretext For Discrimination.

Dr. Goodnow denied Davis promotion to full professor because she did not demonstrate excellence in teaching effectiveness. (Ex.13, December 6, 2019 Memo).

Davis must show that this legitimate, non-discriminatory reason is pretext. *Hazle*, 464 Mich. at 465. She may do so by showing (1) the reasons had no basis in fact, (2) they were not the actual factors motivating the decision, or (3) they were insufficient to justify the decision. *Stokes v. Detroit Public Schools*, 807 Fed.Appx. 493, 500 (6th Cir. 2020); *Dubey v. Stroh Brewery Co*., 185 Mich. App. 561, 565–66, 462 N.W.2d 758 (1990).

Davis cannot establish pretext under any of these methods because:

- It is undisputed that, in order to qualify for promotion to full professor, Davis had to demonstrate "excellence in teaching effectiveness." (Ex.2, Davis, p. 87-88; Ex.7, Policy 3.010, pp. DC000130-000131).

- It is undisputed that teaching effectiveness was evaluated based on forms completed by Davis' students. (Ex.1, Goodnow, pp. 111, 177; Ex.2, Davis, pp. 89-93; Ex.8, Academic Promotion Guide).

- It is undisputed that candidates for full promotion generally scored an average of 90% or higher on the student feedback forms. (Ex.1, Goodnow, pp. 135-136; Ex., Gavin, 36-37).

- It is undisputed that Davis' student feedback scores were predominantly below 90%, which was "lower" than other candidates. (Ex.3, Promotion Packet, pp. DC000271-000272; Ex.4, Gavin, pp. 35-37, 77, 79-80).

- It is undisputed that Davis' student feedback contained numerous negative comments regarding her teaching and her students' belief that they had learned nothing in her classes. (Ex.9, Student Comments).

- It is undisputed that Dr. Goodnow concluded that Davis' learning strategies were not effective and that therefore, her teaching effectiveness was insufficient for promotion to full professor. (Ex.1, Goodnow, pp. 112-115, 136-137, 175-176; Ex.13, December 6, 2019 Memo).

- It is undisputed that Dr. Goodnow applied the same standards to evaluate Davis' promotion packet that she did with other candidates. (Ex.1, Goodnow, pp. 114, 141, 177-178; Ex.5, Curry, pp. 115-116, 121-122, 161-163).

There is thus clear evidence demonstrating that Dr. Goodnow's legitimate, non-discriminatory reason for denying Davis the promotion was not pretextual.

Davis may argue that Dr. Gavin's decision to retroactively promote her somehow shows pretext by Dr. Goodnow. Not so. As Dr. Gavin himself acknowledged, it shows nothing more than a difference of opinion between two decision makers. (Ex.4, Gavin, p. 80). Whether Dr. Goodnow was right or wrong in her assessment of Davis' teaching effectiveness is therefore irrelevant for purposes of the analysis because "[t]he soundness of an employer's business judgment [ ] may not be questioned as a means of showing pretext." *Dubey*, 185 Mich.App. at 565-566 (citing *Chappell v. GTE Products Corp.*, 803 F.2d 261, 266 (6th Cir. 1986)); *see also White v. Dep't of Transportation*, 334 Mich. App. 98, 111, 964 N.W.2d 88 (2020) ("[T]he plaintiff cannot simply show that the employer's decision was wrong or mistaken, since the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent, or competent.") (citations omitted). More importantly, a mere disagreement as to the sufficiency of Davis' credentials does not show discriminatory intent by Dr. Goodnow. *Lytle v. Malady (On Rehearing)*, 458 Mich. 153, 182, 579 NW2d 906 (1998) ("[M]ere disproof of an employer's proffered 'nondiscriminatory' reason is

insufficient to survive summary disposition, unless such disproof also raises a triable question of discriminatory motive, not mere falsity." (citations omitted).

Davis may also argue that she was denied promotion while similarly situated Caucasian candidates were promoted, but for the reasons set forth in Argument A.1.b *supra*, this argument fails. Nor is there other evidence of discriminatory intent by Dr. Goodnow. Davis denied any comments on the basis of race. (Ex.2, Davis, pp. 61, 66-67, 197). While she claimed that Dr. Goodnow treated her poorly, (*Id.*, pp. 41-44, 47, 52-53,172-173) it is undisputed that Dr. Goodnow treated many employees poorly, without regard to race. (Ex.4, Gavin, pp. 19, 21-22, 40, 69-70, 73-76; Ex.5, Curry, pp. 76-77, 169-174).[12] Davis herself admitted that she knew of others outside her protected class that were treated the same way she was. (Ex.2, Davis, pp. 238-239).

Davis clearly thinks she was qualified for promotion to full professor, but her subjective views of her own qualifications do not show discriminatory intent by Dr. Goodnow. *Stokes*, 807 Fed.Appx. at 502 ("[A] plaintiff's subjective assessment of his qualifications alone does not show pretext.") (citations omitted). This is

---

[12] Davis also claimed that Dr. Goodnow was "resistant" to two theater productions she spearheaded in 2008 and 2010, but this was clearly hearsay because Davis admitted she never actually spoke to Dr. Goodnow about the productions, which were, in any event, allowed to proceed. (Ex.2, Davis, pp. 49-50). Davis also claimed that Dr. Goodnow had concerns about Davis' proposed plan to take students to the Jim Crow Museum but acknowledged that she did not know what Dr. Goodnow's concerns were. (*Id.*, pp. 43, 54-55).

particularly true where Davis herself acknowledged that she did not know what Dr. Goodnow was thinking in denying the promotion. (Ex.2, Davis, p. 189). Accordingly, summary judgment must be granted.

### B.   The Court Should Grant Summary Judgment Regarding Davis' First Amendment Retaliation Claim.

Davis alleges that Dr. Goodnow retaliated against her in violation of the First Amendment because she advocated for unionization, academic freedom, and an inclusive campus environment. (ECF No.1, PageID16, ¶40). To establish her claim, Davis must show 1) she engaged in protected speech; (2) an adverse action; (3) causation. *Dye v. Off. of the Racing Comm'n*, 702 F.3d 286, 294–95 (6th Cir. 2012).

Dr. Goodnow concedes for purposes of summary judgment that Davis engaged in protected speech and suffered an adverse action based on the promotion denial.[13] She cannot show causation, however. To do so, she must show that her advocacy efforts "represented **a substantial or motivating** factor" in the promotion denial. *Vereecke v. Huron Valley Sch. Dist.,* 609 F.3d 392, 400 (6th Cir. 2010) (emphasis in original). "[A] motivating factor is essentially but-for-cause – without which the action being challenged simply would not have been taken." *Id.* (internal citations and quotations omitted). Causation can be shown through direct or circumstantial evidence, "including showing temporal proximity between engaging

---

[13]As set forth in Argument A.1.a *supra*, Davis was not constructively discharged and thus cannot rely on her resignation to establish an adverse action.

in protected activity and suffering an adverse employment action or demonstrating the disparate treatment of similarly situated individuals." *Benison v. Ross*, 765 F.3d 649, 661 (6th Cir. 2014) (citations/quotations omitted).

At her deposition, Davis claimed that when she delivered the union organizing petition, Dr. Goodnow appeared "angry" and commented "do you want to give this up" while pounding on a binder containing College policies. (Ex.2, Davis, p. 73). This was the only potential direct evidence Davis identified. (*Id.*, p. 82). To the extent Davis intends to argue that this single incident constitutes direct evidence, it does not. "Direct evidence is evidence, which if believed, does not require an inference to conclude that unlawful retaliation motivated an employer's action." *Spengler v. Worthington Cylinders*, 615 F.3d 481, 491 (6th Cir. 2010); *see also Mansfield v. City of Murfreesboro*, 706 Fed.Appx. 231, 235 (6th Cir. 2017) (direct evidence requires "blatant remarks revealing the [employer's] retaliatory intent"). Even accepting Davis' testimony as true, inferences would be required to conclude that Dr. Goodnow's reference to College's policies and anger indicated she intended to retaliate against Davis for her union advocacy efforts. More problematic for Davis is that this incident occurred in the summer of 2018, **more than one year** before the December 2019 promotion decision. (Ex.2, Davis, pp. 72, 76; Ex.13, December 6, 2019 Memo). This isolated comment was thus too remote in time to constitute direct evidence. *See e.g. Weigel v. Baptist Hosp. of E. Tennessee*, 302 F.3d 367, 382 (6th

23

Cir. 2002) ("It is well established that isolated and ambiguous comments are not sufficient to make out a direct-evidence case of employment discrimination."); *Worthy v. Michigan Bell Tel. Co.,* 472 Fed.Appx. 342, 347 (6th Cir. 2012) (racial slur was not found to be direct evidence because it was "remote in time to the adverse employment decision.")

Davis fairs no better under the circumstantial evidence approach. She cannot rely on temporal proximity because her union advocacy – limited to delivering the petition – occurred more than one year prior to the December 2019 promotion denial, her academic freedom advocacy occurred in 2015 and 2017, and her inclusive campus environment advocacy began when she started employment at the College. (Ex.2, Davis, pp. 33-35, 68-70, 72-74, 76). The extended lag time between the protected activity and promotion denial precludes a finding of causation based on temporal proximity. *Benison*, 765 F.3d at 661 (seven months insufficient to show causation); *Vereecke*, 609 F.3d at 401 (eight months insufficient). Nor can Davis show causation through disparate treatment since, as established in Argument A.1.b *supra*, she cannot identify a similarly situated non-protected comparable who was treated differently.

More importantly, Davis cannot meet the "but-for causation" standard. *Vereecke*, 609 F.3d at 401. The record evidence discloses that Dr. Goodnow's denied Davis the promotion because her student evaluation scores were simply not at the

level Dr. Goodnow expected for a candidate seeking promotion to full professor. (Ex.1, Goodnow, pp. 112-115, 135-137, 175-176; Ex.4, Gavin, pp. 35-37, 79-90). There is no evidence that Dr. Goodnow considered Davis' advocacy efforts in reaching this conclusion; rather, the student evaluation scores speak for themselves. (Ex.3, Promotion Packet, pp. DC000271-000272; Ex.9, Student Comments; Ex.15, Student Feedback). As such, Davis cannot show that her First Amendment protected activity was a factor at all, let alone a "but-for-cause," in Dr. Goodnow's decision. Summary judgment must therefore be granted.

## <u>CONCLUSION</u>

For the reasons set forth above, Defendant Goodnow respectfully requests the Court to grant her Motion for Summary Judgment, dismiss Davis' Complaint with prejudice, and award such other relief as the Court deems appropriate.

Respectfully submitted,

KELLER THOMA, P.C.

By:   /s/ Gouri G. Sashital
   Gouri G. Sashital (P64628)
Attorney for Defendant Goodnow
26555 Evergreen Road, Suite 550
Southfield, MI  48076
(313) 965-7610
Fax:  (313) 965-4480
gsr@kellerthoma.com

Dated:  August 25, 2023

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 25, 2022, I electronically filed the foregoing paper, ***Defendant Jean Goodnow's Motion for Summary Judgment and Brief in Support,*** with the Clerk of the Court using the ECF system which will send notification to all counsel of record.

By:    <u>/s/ Gouri G. Sashital          </u>